**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

JACQUELINE MAYS,  :

                Plaintiff,

-vs-

MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY,
                Defendant.   :

Case No. 3:08-cv-462

District Judge Walter Herbert Rice
Magistrate Judge Michael R. Merz

## REPORT AND RECOMMENDATIONS

Plaintiff brought this action pursuant to 42 U.S.C. §405(g) for judicial review of the final decision of Defendant Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for Social Security benefits. The case is now before the Court for decision after briefing by the parties directed to the record as a whole.

Judicial review of the Commissioner's decision is limited in scope by the statute which permits judicial review, 42 U.S.C. §405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings must be affirmed if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *citing, Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Landsaw v. Secretary of Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence

is more than a mere scintilla, but only so much as would be required to prevent a directed verdict (now judgment as a matter of law), against the Commissioner if this case were being tried to a jury. *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988); *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hepner v. Mathews*, 574 F.2d 359 (6th Cir. 1978); *Houston v. Secretary of Health and Human Services*, 736 F.2d 365 (6th Cir. 1984); *Garner v. Heckler*, 745 F.2d 383 (6th Cir. 1984). However, the Court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner, supra.* If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the Court as a trier of fact would have arrived at a different conclusion. *Elkins v. Secretary of Health and Human Services*, 658 F.2d 437, 439 (6th Cir. 1981).

To qualify for disability insurance benefits (SSD), a claimant must meet certain insured status requirements, be under age sixty-five, file an application for such benefits, and be under a disability as defined in the Social Security Act, 42 U.S.C. § 423. To establish disability, a claimant must prove that he or she suffers from a medically determinable physical or mental impairment that can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). Secondly, these impairments must render the claimant unable to engage in the claimant's previous work or in any other substantial gainful employment which exists in the national economy. 42 U.S.C. §423(d)(2).

The Commissioner has established a sequential evaluation process for disability determinations. 20 C.F.R. §404.1520 . First, if the claimant is currently engaged in substantial

gainful activity, the claimant is found not disabled. Second, if the claimant is not presently engaged in substantial gainful activity, the Commissioner determines if the claimant has a severe impairment or impairments; if not, the claimant is found not disabled. Third, if the claimant has a severe impairment, it is compared with the Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1. If the impairment is listed or is medically equivalent to a listed impairment, the claimant is found disabled and benefits are awarded. 20 C.F.R. §404.1520(d). Fourth, if the claimant's impairments do not meet or equal a listed impairment, the Commissioner determines if the impairments prevent the claimant from returning to his regular previous employment; if not, the claimant is found not disabled. Fifth, if the claimant is unable to return to his regular previous employment, he has established a *prima facie* case of disability and the burden of proof shifts to the Commissioner to show that there is work which exists in significant numbers in the national economy which the claimant can perform. *Bowen v. Yuckert,* 482 U.S. 137, 145, n.5 (1987).

Plaintiff filed an application for SSD on February 15, 2005, alleging disability from December 31, 2001, due to a C5-C6 spinal injury and left shoulder strain. (Tr. 67-69; 86). Plaintiff's application was denied initially and on reconsideration. (Tr. 36-45, 53-55). A hearing was held before Administrative Law Judge Daniel R. Shell, (Tr. 331-49), who determined that Plaintiff is not disabled. (Tr. 19-27). The Appeals Council denied Plaintiff's request for review, (Tr. 5-8), and Judge Shell's decision became the Commissioner's final decision.

In determining that she is not disabled, Judge Shell found that Plaintiff met the insured status requirements of the Act through September 30, 2007. (Tr. 21, ¶ 1). Judge Shell also found that Plaintiff has severe degenerative disc disease, cervical strain, shoulder strain, and depression, but that she does not have an impairment or combination of impairments that meets or

3

equals the Listings. *Id.*, ¶ 3, Tr. 22, ¶ 4. Judge Shell found further that Plaintiff has the residual functional capacity to perform a limited range of light work (Tr. 23, ¶ 5) and that she could perform her past relevant work as a travel clerk or account technician. (Tr. 26, ¶ 6). Judge Shell concluded that Plaintiff is not disabled and therefore not entitled to benefits under the Act. *Id.*, ¶ 7.

Plaintiff injured her neck in October 2000 when she tripped and struck her head. (Tr. 185). An EMG performed on January 9, 2001, showed normal findings and no evidence of cervical radiculopathy. (Tr. 175-76). A January 10, 2001, MRI of Plaintiff's cervical spine showed a C5-6 level central to left lateral broad-based posterior protrusion with mild ventral cord impingement and probable left C6 nerve root impingement within the neural foramen. (Tr. 173).

On January 31, 2002, Plaintiff sought emergency room treatment for complaints of neck pain which radiated into her arm. (Tr. 158-59). At that time, it was reported that a cervical x-ray revealed minimal narrowing of the C6 interspace and no instability on flexion and extension. (Tr. 174). Plaintiff's diagnosis was identified as cervical radiculopathy. (Tr. 159).

Plaintiff consulted with Dr. Africk, a neurosurgeon, on May 20, 2002, who noted that Plaintiff complained of pain, numbness, and tingling in her left arm and hand. (Tr.160-160A, 164). Dr. Africk also noted that Plaintiff had lateral weakness in the left external rotators, but that otherwise her strength was fairly good. *Id.* Dr. Africk reported that Plaintiff had decreased sensation in the entire left hand in a nondermatomal pattern. *Id.* He diagnosed Plaintiff with C6 radicular syndrome with herniated disc. *Id.*

The MRI of Plaintiff's cervical spine performed on June 9, 2002, revealed small to moderate broad-based posterior disc protrusion and end plate spur at C5-6 with mild central cord compression and mild to moderate left foraminal narrowing. (Tr. 161).

4

Dr. Africk reported on July 1, 2002, that Plaintiff complained of tingling in her right-hand and pain in her right shoulder, that the MRI revealed a bulging disc at C5-6 that was central in location which was touching the spinal cord, and foraminal stenosis at that level due to a combination of the herniated disk and bone spurs. (Tr. 163). Dr. Africk recommended that Plaintiff undergo a discectomy and fusion. *Id.*

Plaintiff was treated in the emergency room on September 30, 2002, after she was involved in a motor vehicle accident. (Tr. 178080). Plaintiff's diagnosis was identified as neck strain and she was treated and released. (Tr. 178-80).

Examining physician Dr. Moser reported on April 3, 2003, that Plaintiff complained she had discomfort in her neck and arm and that her whole arm felt numb and tingled. (Tr. 181-185). Dr. Moser also reported that Plaintiff had full range of motion of the left shoulder; palpation of her shoulder revealed no tenderness, that there was no evidence of a rotator cuff tear, she had full range of neck motion although she did experience discomfort, and that palpation of the cervical spine revealed tenderness but no myospasm. *Id.* Dr. Moser noted that Plaintiff's shoulder strain had resolved and he identified Plaintiff's diagnoses as degenerative disc disease (by history and by MRI) and cervical strain, resolved. *Id.* Dr. Moser opined that there were no objective findings which documented the magnitude of Plaintiff's current complaints of a neck strain or shoulder strain, that Plaintiff was able to perform most of the duties of her date-of-injury job, and that she was able to lift 10 pounds or less. *Id.* Dr. Moser also opined that Plaintiff should undergo cervical discectomy and fusion and that her condition was degenerative in nature and not related to the December 31, 2001, injury. *Id.* Dr. Moser concluded that after rehabilitation from surgery for about three months, she could return to her regular work position without restrictions. *Id.*

The record contains a copy of Plaintiff's treatment records from PriMed Physicians dated February 1, 2002, through June 21, 2004. (Tr. 185-216). In September of 2002, Dr. Twyman became Plaintiff's treating physician and over time, he reported that Plaintiff had decreased neck and left upper extremity motion, neck tenderness, and muscle spasm; diagnosed Plaintiff with cervical strain, cervical radiculopathy, and shoulder strain. *Id.*

Nerve conduction studies performed on January 28, 2004, indicated normal findings and no evidence of cervical radiculopathy or other neuropathy. *Id.*

On May 20, 2004, Dr. Twyman reported that he treated Plaintiff for chronic pain control and that surgery would afford Plaintiff the best opportunity for improving, but that Plaintiff's neck surgery was never performed because of denials received under her worker's compensation claim. *Id.* Dr. Twyman concluded that Plaintiff may be able to return to work with lifting limitations. *Id.*

Dr. Twyman reported on June 21, 2004, that he had treated Plaintiff on a regular basis but that she showed only minimal signs of improvement and that her diagnoses were cervical disc disease, cervical strain, and left shoulder pain. *Id.* Dr. Twyman also reported that he did not have much to offer Plaintiff other than chronic pain control, that he was not sure if surgery was an option, and that her condition had stabilized but that it had not improved since he started treating her. *Id.* Dr. Twyman opined that Plaintiff might be able to return to work with a lifting limitation of no more than ten pounds, that she should avoid continuous use of her left arm and avoid overhead activities with the left arm, continuous gripping or squeezing actions with the left hand, and hyperextension of her neck. *Id.*

Plaintiff consulted with Dr. Williams of the Grandview/Southview Hospitals who

reported on September 7, 2004, that Plaintiff appeared distressed, was in a wheelchair, that it was almost impossible to perform an examination of her neck because she was tender to even light touch across the trapezius area, that she was markedly tender with guarding to the point where it was not possible to fully test either strength or reflexes, and that she was wearing a cervical collar. (Tr. 217-18). Dr. Williams also reported that Plaintiff's diagnoses were cervical neck strain, cervical disc disease, left shoulder pain, and nausea. *Id.* Dr. Williams noted that Dr. Africk had determined that Plaintiff had a herniated disc with lateral protrusion at C5-6 and that she was to undergo surgery but due to insurance problems, she had not undergone the procedure. *Id.*

On October 29, 2004, Dr. Timmons, an occupational medicine physician reported that he was aware that two other physicians had recommended a lifting limit of ten pounds, that he had determined that Plaintiff was not even able to lift an object within this limitation during his examination, and that based on this information, as well the history provided, exam findings, and review of available records, he recommended against returning to work activities on a permanent basis because no reasonable or feasible accommodations could be recommended for her to safely and successfully perform the duties outlined in her position description. (Tr. 224-25).

Examining neuropsychologist, Dr. Flexman reported on April 12, 2005, that Plaintiff had a high school education, had completed some college classes, had a relaxed posture but a mild gait disturbance as she walked rather wobbly, and that her general body movements and facial expressions were normal. (Tr. 226-29). Dr. Flexman also reported that Plaintiff's speech was normal, she did not have overt pain behaviors, had fair concentration, and that she reported her mood to be "in pain and uncomfortable". *Id.* Dr. Flexman noted that Plaintiff's intellectual functioning appeared to be average, her effort was fair, her remote memory and judgment were fair, and that

7

somatization was present. *Id.* Dr. Flexman identified Plaintiff's diagnoses as undifferentiated somatoform disorder and depression NOS and he assigned her a GAF of 55. *Id.* Dr. Flexman opined that Plaintiff's ability to understand, remember and carry out short simple instructions, her ability to make judgments for simple work-related decisions, her concentration and attention, and her ability to interact with others were all slightly impaired and that her ability to respond appropriately to work pressures and to respond to changes in the work setting were moderately impaired. *Id.*

An MRI of Plaintiff's cervical spine performed on June 17, 2005, revealed mild broad disc bulge at C5-6 disc level with mild to moderate bilateral neuroforaminal narrowing, mild canal stenosis at C5-6, mild posterior right paracentral disc bulge at C4-5 with mild rightward neuroforaminal narrowing, mild straightening of the cervical spine, and no cord signal abnormality. (Tr. 252-53).

The record contains a copy of treating physician Dr. Mehta's office notes dated June 22 through July 22, 2005. (Tr. 254-63). Those notes reveal that Dr. Mehta treated Plaintiff for gastritis and GERD. *Id.*

The record contains a copy of Plaintiff's records from Dayton Outpatient Physical Therapy dated June 28 through July 25, 2005. (Tr. 264-79). Those records show that for treatment of her cervicalgia and fibromyalgia, Plaintiff participated in several sessions of physical therapy which included manual traction and electrical stimulation. *Id.*

Plaintiff sought mental health treatment from psychologist Dr. Wade in June, 2005. (Tr. 280-90). At that time, Dr. Wade noted that Plaintiff's affect was depressed and tearful, her mood was congruent, her insight and judgment were fair, and that her thought flow was coherent

8

and relevant. *Id.* Dr. Wade also noted that Plaintiff's diagnoses were major depression, cannabis abuse, and rule out alcohol abuse and he assigned her a GAF of 51. *Id.* On July 19, 2005, Dr. Wade reported that Plaintiff's abilities to make occupational adjustments were fair to good, her abilities to make personal adjustments were fair, her abilities to make personal and social adjustments were good to fair to poor, and that her attendance and productivity would be limited due to chronic pain and depression. *Id.*

Plaintiff began treatment with Dr. Gupta at the Dayton Pain Clinic on June 16, 2005. (Tr. 297-323). Dr. Gupta noted that Plaintiff complained of neck pain that radiated to the left upper extremity, her cervical motion was within normal limits, and her sensory function was intact. *Id.* Plaintiff continued to receive treatment from Dr. Gupta through December 8, 2005, and he prescribed a Duragesic Patch and Imipramine and performed epidural injections. *Id.*

Dr. Wade reported on December 8, 2005, that he had seen Plaintiff for a total of six times, the last being September 1, 2005. (Tr. 298). Dr. Wade also reported that since age 35, Plaintiff had been using marijuana to cope with her pain, that she smoked at least once a week, and that she defended her use of marijuana stating it was less harmful than some of the medications that had been prescribed for her. *Id.* Dr. Wade noted that Plaintiff*'s* counseling was not actually terminated but that Plaintiff had stopped attending after her September appointment and that her diagnosis was major depression, recurrent. *Id.*

A March 7, 2006, MRI of Plaintiff's left shoulder revealed downsloping of the anterior acromion process with mild subacromial fat effacement and some mild to moderate tendinosis of the supraspinatus tendon. (Tr. 291).

Plaintiff consulted with orthopedist Dr. Reveal on March 30, 2006, who reported that

9

Plaintiff's left shoulder had full range of motion, no crepitus, and no muscle atrophy. (Tr. 295). Dr. Reveal also reported that Plaintiff had irritability to rotation and flexion of the neck. *Id.* He opined that Plaintiff's discomfort was radicular in nature from her neck and he injected her left shoulder as a test. *Id.* Dr. Reveal reported on April 20, 2006, that Plaintiff had gotten no relief from the shoulder injection and he opined that Plaintiff should return to Dr. Africk to discuss definitive surgery. (Tr. 293).

In her Statement of Errors, Plaintiff alleges that the Commissioner erred by improperly rejecting treating physician Dr. Twyman's opinion, treating psychologist Dr. Wade's opinion, and examining physician Dr. Timmons' opinion and by failing to find that her allegations of disabling pain were entirely credible. (Doc. 11). Further, Plaintiff seeks remand of this matter to the Commissioner pursuant to sentence six of 42 U.S.C. § 405(g) arguing that there is new and material evidence and good cause for failing to submit the evidence to the Commissioner. *Id.*

In general, the opinions of treating physicians are entitled to controlling weight. *Cruse v. Commissioner of Social Security*, 502 F.3d 532, 540 (6th Cir. 2007), *citing, Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997) (citing 20 C.F.R. § 404.1527(d)(2) (1997)). In other words, greater deference is generally given to the opinions of treating physicians than to those of non-treating physicians. *Rogers v. Commissioner of Social Security,* 486 F.3d 234, 242, (6th Cir. 2007), citing *Wilson v. Commissioner of Social Security,* 378 F.3d 541, 544 (6th Cir. 2004). "A physician qualifies as a treating source if the claimant sees her 'with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition.'" *Cruse,* 502 F.3d at 540 (alteration in original) (quoting 20 C.F.R. § 404.1502). However, a treating physician's statement that a claimant is

disabled is of course not determinative of the ultimate issue. *Landsaw v. Secretary of Health and Human Services,* 803 F.2d 211, 213 (6th Cir. 1986). A treating physician's opinion is to be given controlling weight if it is well supported by medically acceptable clinical and laboratory techniques and it is not inconsistent with the other substantial evidence in the record. *Cutlip v. Secretary of Health and Human Services,* 25 F.3d 284 (6th Cir. 1994).

While it is true that a treating physician's opinion is to be given greater weight than that of either a one-time examining physician or a non-examining medical advisor, that is only appropriate if the treating physician supplies sufficient medical data to substantiate that opinion. *See, Kirk v. Secretary of Health and Human Services,* 667 F.2d 524 (6th Cir. 1981), *cert. denied,* 461 U.S. 957 (1983); *see also, Bogle v. Sullivan,* 998 F.2d 342 (6th Cir. 1993). A treating physician's broad conclusory formulations regarding the ultimate issue of disability, which must be decided by the Commissioner, are not determinative of the question of whether an individual is under a disability. *Id.* Further, the Commissioner may properly reject a treating physician's opinion if it is not supported by sufficient medical data or if it is inconsistent with the other evidence of record. *Cf., Kirk, supra; see also, Walters, supra.*

The Commissioner's regulations provide that a treating physician's opinion will be given controlling weight if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence ... in [the] record ... ." 20 C.F.R. §404.1527(d)(2). The regulations provide further that when a treating physician's opinion is not given controlling weight, the Commissioner is to consider certain factors in determining what weight to give the opinion. *Id.* These factors include length of the treatment relationship, frequency of examination, nature and extent of the treatment relationship, the extent

11

to which the opinion is supported by medical signs and laboratory findings, the consistency of the opinion with the record as a whole, and the physician's area of specialty. 20 C.F.R. §404.1527(d)(2)-(6).

In rejecting Dr. Twyman's opinion as to Plaintiff's residual functional capacity with respect to lifting weight, Judge Shell essentially determined that his opinion is not supported by any objective evidence of record. (Tr. 26).

First, the Court notes that Dr. Twyman provided few objective clinical findings to support his restrictive opinion. For example, Dr. Twyman reported that Plaintiff had, at worst, tenderness of her neck, arm, and shoulder and that her range of motion was decreased. However, Dr. Twyman's clinical notes contain no neurological findings. Further, the objective tests of record reveal, at worst, moderate findings. Specifically, cervical spine MRI revealed primarily mild findings with mild to moderate neuroforaminal narrowing at worst. In addition, shoulder x-rays indicated only mild to moderate tendinosis and nerve conduction studies were normal. Additionally, the record reveals that Plaintiff engages in a wide range of activities. *See, infra.* Under these facts, the Commissioner did not err by rejecting Dr. Twyman's opinion.

With respect to Dr. Timmons, the Court notes that he examined Plaintiff on only one occasion and therefore is not considered a treating source under the Regulations. Nevertheless, Judge Shell rejected Dr. Timmons' opinion on the basis that it was based on Plaintiff's subjective complaints and was inconsistent with the other evidence. (Tr. 26). This Court agrees. Specifically, Dr. Timmons provided absolutely no clinical findings to support his conclusions. *See,* Tr. 224-25. Indeed, the only examination findings Dr. Timmons reported was that Plaintiff was not able to lift an object within the ten pound limitation during the examination. *Id.* Finally, similar to Dr.

12

Twyman's opinion, Dr. Timmons' opinion is inconsistent with the other evidence of record. The Commissioner, therefore, did not err by rejecting Dr. Timmons' opinion.

In rejecting Dr. Wade's opinion that Plaintiff is disabled, Judge Shell essentially determined that his opinion is not supported by objective medical evidence and that Dr. Wade did not evaluate Plaintiff's marijuana use as a factor when offering his opinion. (Tr. 22).

As noted above, Plaintiff saw Dr. Wade on only six occasions from June, to September 2005. (Tr. 281, 284-290). In addition, Dr. Wade's treatment notes indeed reflect that during Plaintiff's sessions, they discussed Plaintiff's use of marijuana to sleep and to "cope with pain". (Tr. 285, 288). Treatment notes also reflect that Plaintiff drank beer a few times per week. *Id.* Although Dr. Wade was aware of Plaintiff's use of marijuana and alcohol, he did not consider that factor in offering his opinion that Plaintiff was disabled.

More importantly, however, Dr. Wade's opinion that Plaintiff is not disabled is not supported by his clinical notes. For example, Dr. Wade's clinical notes contain few, if any, objective findings indicating a disabling mental impairment. Specifically, Dr. Wade noted that Plaintiff was cooperative, her thought processes were relevant and coherent, she maintained good eye contact, her memory was intact, and that her insight was fair.

Further, Dr. Wade's opinion is inconsistent with other evidence in the record. For example, Dr. Flexman noted that Plaintiff had fair concentration, her speech was normal, she had a relaxed posture, and that her memory and judgment were fair. Moreover, the record reveals that Plaintiff engages in a variety of activities including preparing food throughout the day, she did dishes, laundry, cleaned, straightened up around the house, went grocery shopping monthly, went to her step children's activities, played bingo, and attended church. In addition, Plaintiff reported

to Dr. Wade that she had many friends and was very social. Finally, Dr. Wade's opinion is inconsistent with the reviewing mental health experts' opinions. (Tr. 230-243).

Under these facts, the Commissioner had an adequate basis for rejecting Dr. Wade's opinion that Plaintiff is essentially disabled.

Plaintiff argues next that the Commissioner erred by rejecting her allegations of disabling pain.

In many disability cases, the cause of the disability is not necessarily the underlying condition itself, but rather the symptoms associated with the condition. *Rogers,* 486 F.3d at 247. Where the symptoms and not the underlying condition form the basis of the disability claim, a two-part analysis is used in evaluating complaints of disabling pain. *Rogers, supra* (citations omitted). First, the ALJ will ask whether there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms. *Id.* (citation omitted). Second, if the ALJ finds that such an impairment exists, then he must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities, *Id.* Stated differently, there is a two-step process for evaluating pain. First, the individual must establish a medically determinable impairment which could reasonably be expected to produce the pain. *See, Jones v. Secretary of Health and Human Services,* 945 F.2d 1365 (6th Cir. 1991), *citing, Duncan v. Secretary of Health and Human Services,* 801 F.2d 847 (6th Cir. 1986). Second, the intensity and persistence of the alleged pain are evaluated by considering all of the relevant evidence. *See, Jones,* 945 F.2d at 1366-70.

The measure of an individual's pain cannot be easily reduced to a matter of neat calculations. *Jones, supra.* There are no x-rays that can be taken that would objectively show the

14

precise level of agony that an individual is experiencing. *Id.* Hence, in evaluating the intensity and persistence of pain, both physicians and laymen alike must often engage in guesswork. *Id.* The Commissioner's own guidelines acknowledge the most inexact nature of this evaluation:

> Medical history and objective medical evidence such as evidence of muscle atrophy, reduced joint motion, muscle spasm, sensory and motor disruption, are usually reliable indicators from which to draw reasonable conclusions about the intensity and persistence of pain and the effect such pain may have on the individual's work capacity. Whenever available this type of objective medical evidence must be obtained and must be considered in reaching a conclusion as to whether the individual is under a disability.

*Jones,* 945 F.2d at 1369-70, *quoting* S.S.R. 88-13.

Although he determined that Plaintiff has the severe impairments of degenerative disc disease, cervical strain, shoulder strain and depression, Judge Shell determined that Plaintiff's complaints of disabling pain and limitations were not entirely credible essentially because they are not supported by the record. (Tr. 24-26). This Court agrees.

For the same reasons that the Commissioner did not err in his analysis of the evidence as to Plaintiff's impairments, he did not err by rejecting Plaintiff's allegations of disabling pain. Specifically, the record contains few positive clinical findings and the objective test results indicate, at worst, moderate findings. In addition, Plaintiff's self-reported activities are inconsistent with her allegations of disability. Under these circumstances, the Commissioner did not err by rejecting Plaintiff's subjective complaints and allegations of disabling pain.

Finally, Plaintiff contends that this matter should be remanded for the consideration of a March 13, 2008, report from Dr. Melinda Scott which she (Plaintiff) submitted to the Appeals Council. *See,* Tr. 324-26.

The remand provision of 42 U.S.C. §405(g) provides that the court may order a case

remanded to the Commissioner for further consideration "only upon a showing that there is new evidence which is material and there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. §405(g); *see also, Casey v. Secretary of Health and Human Services,* 987 F.2d 1230, 1233 (6th Cir. 1993).

The court may review new evidence submitted after the Administrative Law Judge's decision for the limited purpose of determining the appropriateness of a remand to the Commissioner under sentence six of 42 U.S.C. §405(g). *Wyatt v. Secretary of Health and Human Services,* 974 F.2d 680, 685 (6th Cir. 1992). Such remand is appropriate, however, only if the court finds that the evidence is new and material and there is good cause for the failure to incorporate that evidence into the record of the prior proceeding. *Sizemore v. Secretary of Health and Human Services,* 865 F.2d 709, 711 (6th Cir. 1988).

To establish materiality, the plaintiff must show, "a reasonable probability that the Commissioner would have reached a different disposition of the disability claim if presented with the new evidence." *Sizemore,* 865 F.2d at 711 (citations omitted). New evidence on an issue already fully considered by the Commissioner is cumulative and is not sufficient to warrant remand of the matter. *Carroll v. Califano,* 619 F.2d 1157, 1162 (6th Cir. 1980). Additional evidence is material only if it concerns the plaintiff's condition prior to the Commissioner's decision. *Oliver v. Secretary of Health and Human Services,* 804 F.2d 964, 966 (6th Cir. 1986). Evidence of a subsequent deterioration or change in the plaintiff's condition after the administrative hearing is deemed immaterial. *Wyatt,* 974 F.2d at 685, *citing, Sizemore,* 865 F.2d at 712.

To show good cause, plaintiff must present some justification for the failure to have acquired and presented such evidence to the Commissioner for inclusion in the record during the

hearing before the Administrative Law Judge. *See, Willis v. Secretary of Health and Human Services,* 727 F.2d 551 (6th Cir. 1984); *see also, Oliver, supra.* Additional evidence generated for the purpose of attempting to prove disability in contrast to evidence produced by continued medical treatment does not meet the good cause requirement of the Act. *Koulizos v. Secretary of Health and Human Services,* No. 85-1654 (6th Cir. Aug. 9, 1986) (table 802 F.2d 458).

A review of the additional evidence dated March 13, 2008, reveals that Dr. Scott reported that Plaintiff denied any significant history of alcohol use, denied use of illicit drugs, that her cervical spine movements were moderately restricted, and that there was left subacrominal tenderness present. (Tr. 324-26). Dr. Scott also reported that Plaintiff neurologic examination was normal and that her diagnoses were degenerative disease of the cervical spine with radiculopathy and left subacrominal bursitis. *Id.*

This Court concludes that the additional evidence does not satisfy the "materiality" requirement for remand. Specifically, Dr. Scott's report does not substantiate any new or additional clinical findings. Additionally, those finding which Dr. Scott did document were, at worst, moderate. Further, as noted *supra*, Dr. Wade identified Plaintiff's diagnoses as, *inter alia,* cannabis abuse and rule out alcohol abuse, which indicates that Plaintiff reported to Dr. Wade behaviors indicating substance abuse. That, of course, contradicts the information Plaintiff apparently provided to Dr. Scott. Finally, Dr. Scott's report does not reflect a change in Plaintiff's condition prior to the administrative hearing which would support a finding that Plaintiff is disabled.

Even assuming that Plaintiff has satisfied the materiality requirement for remand, Plaintiff has failed to demonstrate "good cause" for failing to present this evidence to Judge Shell. Although Judge Shell held the hearing in this matter in November, 2007, and the additional

evidence, which is dated March 13, 2008, was certainly not in existence at the time of the hearing. However, Judge Shell did not issue his decision until April 15, 2008, a month after Dr. Scott examined Plaintiff and provided her report.

This Court concludes that Plaintiff has not satisfied either the "materiality" or "good cause" requirements for remand.

Our duty on appeal is not to re-weigh the evidence, but to determine whether the decision below is supported by substantial evidence. *See, Raisor v. Schweiker,* 540 F.Supp. 686 (S.D.Ohio 1982). The evidence "must do more than create a suspicion of the existence of the fact to be established. ... [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." *LeMaster v. Secretary of Health and Human Services,* 802 F.2d 839, 840 (6th Cir. 1986), *quoting, NLRB v. Columbian Enameling & Stamping Co.,* 306 U.S. 292, 300 (1939). The Commissioner's decision in this case is supported by such evidence.

It is therefore recommended that the Commissioner's decision that Plaintiff was not disabled and therefore not entitled to benefits under the Act be affirmed.

October 15, 2009.

*s/ Michael R. Merz*
United States Magistrate Judge

# NOTICE REGARDING OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).